IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| JIMMY RAY MOORE, § | |
| TDCJ No. 1771243, § | |
| Petitioner, § | |
| § | |
| v. § | Civil Action No. 7:13-CV-046-O |
| § | |
| WILLIAM STEPHENS, Director, § | |
| Texas Department of Criminal Justice, § | |
| Correctional Institutions Division, § | |
| Respondent. § | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND RECOMMENDATION**

By Order of Reference (Docket No. 21) this action was referred to the undersigned for further review, a hearing, if necessary, and findings of facts, conclusions of law, and recommendation. By his petition for habeas corpus under 28 U.S.C. § 2254, Petitioner Moore challenges the results of a prison disciplinary decision that resulted in his loss of 365 days of "good conduct time" in addition to the imposition of a number of additional sanctions.

Factual Background

Petitioner Moore is incarcerated in the TDCJ-CID Allred prison unit serving three sentences. A procedural history of any direct or collateral proceedings with regard to Moore's holding convictions is irrelevant to the disposition of this case because Moore does not directly challenge his convictions. But the offenses for which he was convicted do not render him ineligible for "mandatory supervision" under Texas peneological statutes.[1]

---

[1]   So acknowledged by the State in its Response, Docket No. 14, p. 9.

<u>Disciplinary Procedure Background</u>

On January 10, 2013, Moore was notified that he was being charged with the prison disciplinary offense of assaulting an officer without a weapon that results in serious injury.[2] Four days later, at the disciplinary hearing during which Moore participated, the DHO found Moore guilty of the charge and assessed his punishment as: (1) loss of forty-five days of recreation and commissary privileges; (2) fifteen days of solitary confinement; (3) loss of property for forty-five days; (4) reduction is line-class from S3 to L1; (5) suspension of contact visits until February 28, 2013; and (6) 365 days loss of good time credits.[3]

On January 18, 2013, Moore submitted a Step-One grievance, appealing the disciplinary action and initiating a grievance case.[4] This grievance was denied. Moore then filed a Step-Two grievance, which was also denied. Moore then filed the instant Petition on April 10, 2013. The State has responded (Docket No. 14) and filed the Administrative Record (Docket No. 16).[5]

<u>Alleged Grounds</u>

By his Petition, Moore alleges two grounds for relief, to-wit:(1) that at the disciplinary hearing, there was insufficient evidence to support his finding of guilt, and (2) that the DHO engaged in arbitrary and capricious decision making.

---

[2] Section 3.4 of Level One Offenses, Attachment A to TDCJ Disciplinary Rules and Procedures for Offenders (April 2012).

[3] Disciplinary Hearing Record, Attachment No.2 to Administrative Record, Docket No. 16, p. 3.

[4] Which was assigned identification number 2013079180.

[5] Consisting of the Disciplinary Hearing Record as "DHR," the Disciplinary Grievance Record as "DGR," and the Disciplinary Hearing Audio as "DHA."

State Response

The State responds that with respect to Ground 2 the claim is unexhausted, procedurally barred and must be dismissed. Specifically, the State asserts that "Moore failed to present claim 2, as construed in the Petitioner's Allegation section, in his Step 1 grievance form...Therefore, the Director asserts that claim 2 is unexhausted."[6]

The State responds that with respect to Ground 1 the sanctions imposed as a result of the disciplinary proceeding (apart from the loss of the good conduct days) do not pose an "atypical" or "significant hardship" beyond "the ordinary incidents of prison life," do not affect the duration of Moore's sentence, and thus do not implicate a liberty interest entitled to protection. With respect to the "loss of good time" disciplinary sanction, the State urges that the claim be denied because in the disciplinary process the State did afford Moore all constitutionally required due process.

Exhaustion Standards

Pursuant to 42 U.S.C. § 1997e,[7] the petitioner was required to exhaust administrative remedies available to him at the prison prior to commencing a civil action in this Court with respect to prison conditions. This provision is mandatory and applies broadly to "all inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 532, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002). Further, a prisoner must exhaust administrative remedies by complying with applicable prison grievance procedures before filing a suit relative to prison conditions. *Johnson v. Johnson*, 385 F.3d 503, 517

---

[6] State Response, Docket No. 14, p. 5.

[7] 42 U.S.C. § 1997e (a) provides: "No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

3

(5th Cir. 2004). Not only must the prisoner exhaust all available remedies, but such exhaustion must be proper, including compliance with an agency's deadlines and other critical procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 90, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006); *Lerma v. Estelle*, 585 F. 2d 1297 (5th Cir. 1978); *Broussard v. Johnson*, 253 F.3d 874, 877 (5th Cir. 2001). *Id.*

As described in *Johnson*, "The Texas prison system has developed a two-step formal grievance process. The Step 1 grievance, which must be filed within fifteen days of the complained-of incident, is handled within the prisoner's facility. After an adverse decision at Step 1, the prisoner has ten days to file a Step 2 grievance, which is handled at the state level. This court has previously held that a prisoner must pursue a grievance through both steps for it to be considered exhausted. See *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). *Id.*

One of the principal purposes of the administrative exhaustion requirement is to provide fair notice to prison officials of an inmate's specific complaints so as to provide "'time and opportunity to address complaints internally. Further, the degree of specificity necessary in a prisoner's grievance should be evaluated in light of this purpose." *Id.*, at p. 516.

<u>Ground 2 Exhaustion Analysis</u>

As evidentiary support for Ground 2 claim that the DCO's decision was arbitrary and capricious and an abuse of discretion, in his petition in this Court Moore asserts that the officer who initiated the disciplinary proceeding filed a false report and the hearing officer was arbitrary and capricious in covering up a major use of force. Moore further asserts that the hearing officer made no sort of independent credibility and reliability determination and violated due process. By his later Reply to the State's Response,[8] Moore asserts that any pleading deficiency with regard to his

---

[8] Docket No. 20.

4

allegations in support of his Ground 2 in his federal Petition was due to prison grievance guidelines mandating that an inmate "write briefly and clearly" and that "a grievance should contain facts, not legal words or conclusions." Moore urges that the Court interpret his Petition allegations in this Court liberally.

The State, on the other hand, simplistically compares the language Moore used in articulating his Ground 2 in his federal petition to the language he used in his Step-One grievance form, ignoring the substantive content of both. The issue is not how well an untrained inmate can articulate his complaints, but whether those complaints gave the state adequate notice of the substantive core of the inmate's complaints giving the state the time and opportunity to address those complaints internally.

Examining both of Moore's Step One and Step Two grievance forms[9] I find the Moore made the following allegations:

A.  Step One Grievance
    1.  Finding of guilt was not based on a preponderance of credible evidence.
    2.  Offender presented non-frivolous evidence.
    3.  Conflict in witness testimony as to whether Moore used profane language.
    4.  Conflict in testimony as to whether Moore tendered his ID to the officer.
    5.  Preponderance of the evidence not met.
    6.  Challenges the credibility of the officer as to busted lip and broke finger-not exhibited at the hearing.
B.  Step Two Grievance
    1.  No preponderance of the evidence of guilt.
    2.  Inconsistencies and conflicts in evidence.
    3.  Officer not credible.
    4.  Step 1 Review was arbitrary and capricious.
    5.  No evidence to support finding that officer was injured or assaulted.
    6.  No injury by definition-since no treatment beyond first aid.
    7.  Code section 3.4 assault requires "serious injury."
    8.  No medical staff evidence as to serious injury.
    9.  No due process.

---

[9]  Administrative Record, Docket No. 16, Attachment #1, DGR.

     10.    Blind acceptance of officer's testimony is unacceptable.
     11.    No evidence that the hearing officer took any sort of independent credibility or reliability determination.
     12.    No basis for agency action taken.
     13.    Unnecessary unreasonable use of force by officer was unconstitutional.

The core essence of Moore's complaints in this Court are that the DHO's decision in the disciplinary proceeding was arbitrary and capricious since there was no evidentiary support for any implied finding that the complaining officer was "seriously injured" as required under the particular disciplinary charge Moore was require to answer to in the disciplinary proceeding. In asserting that there was no evidentiary support for such an implied finding, Moore challenges the hearing officer's credibility findings regarding the complaining officer's sworn statements and testimony. As demonstrated above, this essential core of Moore's complaints were presented in his Step Two grievance form.

I find that Moore's Step One and Step Two grievance forms adequately provided the prison officials the degree of specificity of Moore's complaints regarding the disciplinary proceeding thereby providing the prison officials "time and opportunity to address" those complaints internally. I conclude that Moore's Ground Two was not unexhausted at the state level and that consideration of this ground is not barred and shall be considered on its merits herein.

Disciplinary Sanctions

In addition to the loss of good conduct time credits, as a result of Moore's disciplinary case, he was assessed the punishment of (1) loss of forty-five days of recreation and commissary privileges; (2) fifteen days of solitary confinement; (3) loss of property for forty-five days; (4) reduction is line-class from S3 to L1; and (5) suspension of contact visits until February 28, 2013. To the extent Moore challenges the loss of recreation and commissary privileges, the solitary

confinement, the loss of property, and the suspension of contact visits, such punishment does not pose an "atypical" or "significant hardship" beyond "the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484-86 (1995).[10] Rather, it constitutes a change in the conditions of Moore's confinement and, therefore, does not implicate the protections afforded by the Due Process Clause. *Id.* at 486 (holding that no liberty interest was implicated by placement in administrative segregation) and *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir. 1997) (holding that thirty days' commissary and cell restrictions do not implicate due process concerns).

Likewise, Moore's time-earning classification will not "inevitably affect the duration of his sentence." *Sandin*, 515 U.S. at 487. The possibility that Moore's time-earning classification would affect when he is ultimately released from prison "is simply too attenuated to invoke the procedural guarantees of the Due Process Clause." *Id*. Moore cannot show that the reduction of his time-earning classification has automatically changed the length of his sentence to the degree that it precluded him from any entitlement to an accelerated release date. *Carson v. Johnson*, 112 F.3d 818, 821 (5th Cir. 1997). It is well settled that the timing of Moore's release is "too speculative to afford him a constitutionally cognizable claim to the 'right' to a particular time earning status." *Malchi v. Thaler*, 211 F.3d 953, 959 (5th Cir. 2000); *Luken v. Scott*, 71 F.3d 192, 193-94 (5th Cir. 1995); *Hinohosa v. Thaler*, 427 Fed. Appx 354 (5th Cir. 2011).

I conclude that with respect to the loss of privileges, the solitary confinement, the loss of property, the suspension of contact visits, and the reduction of his time-earning classification, Moore has failed to state a claim that entitles him to federal habeas corpus relief.

---

[10] See also, *Wilkinson v. Austin*, 545 U.S. 209, 125 S.Ct. 2384, 2394, 162 L.Ed.2d 174 (2005).

Loss of Good Time Credits

One of the punishments imposed on Moore as a result of the disciplinary proceeding was the loss of 365 "good time" credits. The Supreme Court has held that states may, in some instances, create liberty interests which are protected by the Due Process Clause through the language of prison regulations. *Sandlin*, 515 U. S. at 483-84. Good-time credit revocation proceedings must meet due process requirements. *Dedrick v. Outlaw*, 345 Fed. Appx. 930, 931 (5th Cir. 2009). The standards for satisfying due process are set out in *Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974). Due Process in this context means that prison officials should: (1) provide advance written notice of at least twenty-four hours to the prisoner before the proceeding; (2) issue a written statement of the fact finders of the evidence they relied on and the reasons for their action; and (3) allow the prisoner an opportunity to call witnesses and present documentary evidence in his defense. *Id*. at 563-68; *Houser v. Dretke*, 395 F.3d 560, 562 (5th Cir. 2004); *Smith v. Rabalais*, 659 F.2d 539, 542 (5th Cir. 1981).

While loss of good time credits in Texas does not implicate due process concerns in the context of parole considerations, it does with respect to those inmates who are eligible for "mandatory supervision" under the provisions of the Texas Government Code.[11] The State concedes that Moore is eligible for "mandatory supervision." I conclude that since Moore is eligible for mandatory supervision under the Texas penal system statutes he had a liberty interest in his earned good time credits and was entitled to procedural due process during the disciplinary proceeding as mandated by *Wolff v. McDonnell*.

---

[11] So held in *Teague v. Quarterman*, 482 F. 3d 769 (5th Cir. 2007)*;* followed in *Hinojosa v. Thaler*, 427 Fed. Appx. 354, 355 (5th Cir. 2011); predicted in *Malchi v. Thaler,* 211 F. 3d 953 (5th Cir. 2000) and *Madison v. Parker*, 104 F.3d 765 (5th Cir. 1997).

8

A review of the disciplinary proceeding record[12] discloses that Moore was provided written notice of the disciplinary proceeding four days in advance,[13] that the written notice adequately disclosed the nature of the charge,[14] an opportunity to call witnesses and present documentary evidence,[15] and the reason for the disciplinary action.[16] Incident to finding Moore guilty of the disciplinary offense, the DHO recited verbally, and then noted in writing on the hearing form, that he considered both the Offense Report prepared by Officer Charles and then confirmed by Officer Charles during his own testimony. This recitation by the DHO at the conclusion of the hearing and the notation thereof by the DHO on the hearing form itself satisfies the due process requirement under *Wolff* that the inmate be provided with a written statement of the evidence relied upon. Accordingly, I find that at the disciplinary hearing Petitioner Moore was accorded all procedural due process the law requires *except* for a determination as to the sufficiency of the evidence.

### Evidence Sufficiency

Moore was charged with assaulting a correctional officer without a weapon that results in a serious injury. He argues extensively that the DHO's decision was not supported by the evidence and it is upon this assertion that he claims that the hearing officer was arbitrary and capricious in making his decision. Moore alleges the evidence was insufficient to support an implied finding that

---

[12]   Disciplinary Hearing Record (DHR) and Audio Disc, Attachments Nos. 2 and 3 to Administrative Record, Docket No. 16.

[13]   DHR at p.3 showing 1-10-13 notice date and 1-14-13 hearing date.

[14]   Recitation: That on 1-8-13, at 05:50 p.m. at the inmate dining room, offender Jimmy Ray Moore, assaulted correctional officer William Charles by striking him in the mouth with a closed right hand and kicking officer Charles right hand, resulting in injuries that required treatment beyond first aid.

[15]   DHR p. 14 rights advisement, p.18 notes of telephone interview of lunchroom attendant Free, a witness designated by Moore per p. 14.

[16]   *Id.* "To deter the offender from assaulting staff, it[s] the offenders first major offense in the last 180 days."

9

the officer sustained an injury that required medical treatment more than first aid as determined by the unit medical staff which Moore argues is an express condition mandated by the Disciplinary Rules which formed the basis for his disciplinary charge. The applicable section of the Level One Offenses provides as follows:

> XIV. TDCJ Disciplinary Offenses; LEVEL 1 OFFENSES
> 3.0 (Offense code is idle, and used only for definitions of terms below.) Definitions of terms below: a weapon is any instrument used for the purpose of inflicting physical injury on another person; a *serious injury* is any injury that requires treatment beyond first aid, *as determined by unit medical staff*; and a non-serious injury is any injury that requires treatment up to first aid, as determined by unit medical staff.
> 3.1 Assaulting an officer, or any other person who is not an offender, with a weapon that results in a non-serious injury or no injury
> 3.2 Assaulting an officer, or any other person who is not an offender, with a weapon that results in a serious injury
> 3.3 Assaulting an officer, or any other person who is not an offender, without a weapon that results in a non-serious or no injury
> *3.4 Assaulting an officer, or any other person who is not an offender, without a weapon that results in a serious injury.* (Emphasis Supplied).

"The federal courts cannot assume the task of retrying all prison disciplinary disputes." *Smith v. Rabalais*, *supra* at p. 545. Accordingly, federal courts do not review a DHO's factual findings *de novo*. Instead the courts will only consider whether the decision is supported by "some facts" or by "a modicum of evidence." *Superintendent v. Hill*, 472 U.S. 445, 454-55, 105 S. Ct. 2768, 86 L. Ed. 2d 356 (1985). Federal courts are not required to examine the entire record, independently assess the credibility of witnesses, or weigh the evidence to determine whether there is sufficient evidence to support the factual findings of the DHO. *Hill*, 472 U.S. at 455. Instead, the court should consider whether there is *any evidence* that could support the finding. *Id*. at 455-56.

In *Morgan v. Dretke*, 433 F. 3d 455, 458 (5th Cir. 2005), the Court held: "The 'some evidence' standard is extremely deferential -- we have found a single report or testifying witness sufficient to support an adverse disciplinary decision. See, e.g., Hudson v. Johnson, 242 F.3d 534,

537 (5th Cir. 2001) (finding one officer's incident report sufficient); Smith v. Rabalais, 659 F.2d 539, 545 (Former 5th Cir. 1981) (finding "unsupported and generalized testimony based entirely on information from an unidentified prison informant" sufficient)."

In this case, the record[17] reflects that Petitioner Moore was afforded a complete opportunity to tell his side of the events of January 8, 2013 at length. Moore testified that he never struck Officer Charles even after Charles pushed Moore to the wall to gain his compliance with Charles' demand that Moore hand over his ID. Officer Charles testified that while he was forcing Moore to the wall to control him Moore did strike him in the mouth with his closed hand and then kicked his right hand as he drew back from Moore following the hand strike. These diametrically opposed testimonies of both men presented plausible scenarios of the events in the lunchroom. Moore had a written report of a lunchroom attendant Ms. Free read into the record. She reported that she heard Office Charles ask Moore for his ID, that she "did not see" Moore strike Officer Charles, but she saw Officer Charles "bleeding" and Charles said "his finger was broke."

In the face of this conflicting testimony, the hearing officer was faced with a credibility determination. Which scenario was true? He chose to believe Officer Charles and not Moore. Determining the believability of the testimonies presented at the hearing is left to the discretion of the hearing officer. *Hudson v. Johnson*, 242 F.3d 534, 537 (5th Cir. 2001). Accord, *McKoy v. Fox*, 2012 U.S. Dist. LEXIS 183503(E.D. Tex. 2012).

Petitioner Moore was charged with a Level One Offense numbered 3.4 "Assaulting an officer, or any other person who is not an offender, without a weapon that results in a serious injury." As used in the Disciplinary Offense section of the Texas Department of Criminal Justice

---

[17] The DHR which contains all of the documents constituting the disciplinary proceeding record and includes an audio computer disc recording of the hearing itself.

Disciplinary Rules and Procedures for Offenders setting out the Level One Offenses, Section 3.0 defines "a serious injury" is any injury that " requires treatment beyond first aid, as determined by unit medical staff." Petitioner Moore claims that there is not sufficient evidence that the injuries sustained by Officer Charles were "serious injuries" as defined by Code Section 3.4.

    At the commencement of the disciplinary hearing the hearing officer read into the record the Offense Report. The Offense Report prepared by Officer Charles states that the "injuries required treatment more than first aid." During the hearing the written statement of lunchroom attendant Free was read into the record. The lunchroom attendant Free wrote that she saw Officer Charles "bleeding" and heard him say "his finger was broke. " In the DHR there is a picture of Officer Charles showing a dried blood drip on his chin from the right side of his lower lip. There is also a picture of Officer Charles' hand showing his right hand index finger slightly askew from the other fingers on that hand. During the hearing Officer Charles confirmed to the DHO that the Offense Report was true, thereby confirming his claim that the "injuries required treatment more than first aid." During the hearing Moore did not dispute that Officer Charles was injured. When asked how Officer Charles would have "gotten a busted lip," Moore responded that he didn't know. When asked how Officer Charles' hurt his hand, Moore surmised that he hurt his hand when he struck Moore "up aside my head." Moore never denied the existence of those injuries.

    I find that there is "some evidence" in the disciplinary hearing record to support the DHO's finding that Moore did assault an Officer Charles without a weapon. Further, I find that there is "some evidence" in the disciplinary record to support the disciplinary officer's implied finding that Officer Charles was injured by the assault. However, I find that there is no evidence *in the record* that the injuries sustained by Officer Charles were determined *by the unit medical staff* to have been serious. Although there is some evidence in the record that Officer Charles' testified that his injuries "required treatment more than first aid," there is no evidence in the record that Officer Charles was

12

ever seen by, examined by, diagnosed by, or treated by the unit medial staff or that the unit medical staff ever made any form of determination of the seriousness of Officer Charles' injuries. Although the disciplinary hearing office may have known from other sources the results of unit medical staff actions, in the absence of any evidence in the record of the involvement of the unit medical staff or of the hearing officer's knowledge thereof, I cannot find that as a matter of fact or as a matter of law that there was any evidence that Petitioner Moore was guilty of the exact offense with which he was charged.

Although the evidence in the record would support a finding that he was guilty of Level One Offense 3.3, "Assaulting an officer...without a weapon that results in a non-serious or no injury," that was *not* the charge made against Petitioner Moore or found by the hearing officer.

In the analogous case of *Morgan v. Dredtke*, *supra*, the district court denied a petitioner's § 2254 habeas corpus challenge to a prison disciplinary decision finding him guilty of "assaulting an officer with a resulting 'non-serious' injury." The Court of Appeals reversed that decision even in the face of the State's argument that in spite of the fact that the officer who was assaulted sustained *no injury*, Morgan could have rightfully been found to have violated the section of the Disciplinary Rules that defined the offense as "assaulting an officer...without a weapon, causing 'non-serious injury' or at least of simple assault. The Court of Appeals determined that the finding of "no injury" precluded any finding of "non-serious injury," a necessary finding under the regulatory definition of that offense and that the Disciplinary Rules did not make simple assault as defined by the Texas Penal Code a disciplinary offense.[18] It is clear from this *Morgan* case that the district courts are instructed that the express language of the TDCJ Disciplinary Rules control as to

---

[18] It may be noted that in response to the *Morgan v. Dredtke* decision, Section 3.3 was subsequently amended to include the words "or no injury."

the scope and meaning of the conduct and conditions that constitute offenses warranting discipline in the Texas prison context.

## Recommendation

In the absence of any statutory, regulatory, or case-based authority limiting the binding nature of the "unit medical staff" determination mandated in the definition of "serious injury" in section 3.0 Level One Offenses, I recommend to the District Court that Moore's petition be GRANTED, that the disciplinary decision be VACATED, and the 365 days of good time cancelled by the disciplinary decision be RESTORED to Petitioner.

## Notice

A copy of this report containing findings and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of this order, report, findings and recommendations must file specific written objections within fourteen (14) days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

It is so Found, Recommended and Ordered, this 7th day of October, 2014.

*Robert K. Roach*
Robert K. Roach
UNITED STATES MAGISTRATE JUDGE